**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-8047
_____

DOMENIC LAUDATO, JR.

v.

EQT CORPORATION; EQUITRANS, L.P.; EQT
PRODUCTION COMPANY; EQM MIDSTREAM
PARTNERS, L.P.,
Petitioners
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-18-cv-01005
District Judge: Honorable Cathy Bissoon
_____

Submitted November 3, 2021

Before: KRAUSE, RESTREPO, and SMITH, *Circuit Judges*

(Filed: January 20, 2022)

Lucas Liben
Devin M. Misour
Nicolle R. Snyder Bagnell
Colin E. Wrabley
Reed Smith
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222
  *Counsel for Petitioners*

Jordan H. Walker
Sever Storey
881 Third Avenue, Southwest
Suite 101
Carmel, IN 46032
  *Counsel for Respondent*

———————————————

OPINION OF THE COURT

———————————————

SMITH, *Circuit Judge*.

Before the Court is the Petition to Appeal Under Rule 23(f) filed by EQT Corp., Equitrans, L.P., EQT Production

Co., and EQM Midstream Partners, L.P. (collectively, "EQT"). For the reasons set forth below, the Court will **GRANT** the Petition.

I.

On July 30, 2018, roughly one hundred Pennsylvania landowners filed a class-action complaint against EQT alleging that EQT has been storing natural gas in six separate storage fields, thereby utilizing the landowners' underground pore space[1] without providing them due compensation. In May 2020, all landowners except for Domenic Laudato Jr. voluntarily dismissed their claims without prejudice. And in February 2021, Laudato moved for class certification, seeking approval of a class defined as:

> All persons and/or entities that own and/or owned real property—and/or natural gas storage rights to real property—located within the certificated boundaries of one or more of the Gas Storage Fields for any period of time not before Defendants' inception of the respective gas

---

[1] The complaint alleged that EQT injects natural gas into "naturally occurring geologic formation[s] consisting of porous and permeable rock" on plaintiffs' properties when demand is low and withdraws it when demand is high. Complaint ¶¶ 113–14, 131, *Asbury v. EQT Corp.*, No. 2:18-cv-01005-CB (W.D. Pa. July 30, 2018) (Doc. No. 1); *see also* Joseph A. Schremmer, *Pore Space Property*, 2021 UTAH L. REV. 1, 7–8 (2021) (discussing what underground pore space is and why it is used for natural gas storage).

storage field, but to whom Defendants have and had failed to compensate for natural gas storage rights within the respective field(s) for the entirety of time of real property or natural gas rights ownership.

The District Court agreed with Laudato that "it would seem in *everyone's* best interests to resolve this case on a class basis,"[2] and declared that "class certification will be granted, with instructions." Order at 1, *Asbury v. EQT Corp.*, No. 2:18-cv-01005-CB (W.D. Pa. Sept. 29, 2021) (Doc. No. 109) (emphasis in original). But it rejected Laudato's proposed class definition, thereby refusing to grant other downstream requests such as appointment as class representative,

---

[2] This Court has recognized that "global peace"—using the class vehicle for resolving all parties' claims stemming from certain conduct—is a "valid, and valuable, incentive" for defendants. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310–11 (3d Cir. 2011) (en banc). But EQT has made clear that it does not view class treatment as useful here. *See* Pet. at 28–29 ("The court believed that a reformulation of the class definition might overcome these individualized issues and cure the reasons why certification is improper here, but that is both wrong and insufficient to support certification. The putative class members' claims inherently turn on individualized questions of property ownership and valuation, the class members' knowledge of their rights, and Defendants' specific conduct as to each tract and parcel of the class members' property. No redefinition of the class can change this."). Regardless, whether pursuing global peace is in a defendant's "best interests" is not for the District Court to decide.

4

appointment of class counsel, and certain issues' certification. The District Court then directed the parties to meet and confer "regarding the establishment of an appropriate class definition." *Id.* at 4.

This Petition followed.

## II.

The District Court exercised federal-question jurisdiction over claims under the Natural Gas Act, as codified at 15 U.S.C. §§ 717–17z, and supplemental jurisdiction over other, related claims. 28 U.S.C. §§ 1331 & 1367.

The District Court's order is not a final order, so any exercise by this Court of jurisdiction over an appeal would be founded in 28 U.S.C. § 1292(e),[3] through the invocation of Federal Rule of Civil Procedure 23(f). *See In re NFL Players Concussion Inj. Litig.*, 775 F.3d 570, 575–77 (3d Cir. 2014) (explaining the Court's jurisdiction over various interlocutory appeals, including class-action certification decisions). Rule 23(f) permits appeals "from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1)." If the District Court's order is not

---

[3] Section 1292(e) provides that the "Supreme Court may prescribe rules" allowing for an interlocutory appeal not otherwise included in that section.

5

countenanced by Rule 23(f) nor by any other rule, this Court would lack interlocutory jurisdiction.

Laudato argues that the Petition should be denied because this Court would not have jurisdiction to hear an appeal of the District Court's order, which—he argues—is not a Rule 23 grant or denial of class-action certification. According to Laudato, "a plain text reading of the district court's order in this matter reveals that it falls well short of an appealable 'certification order' under Rule 23(f)." But if the order granted class-action certification, we will not shield it from review just because it "falls well short of" the requirements of such an order. Here, the order clearly stated a grant of class certification.

For example, Laudato focuses on the "preliminary" nature of the District Court's order and places significant weight on such language: it *will* grant certification; an *ultimate* class-certification order is forthcoming; etc. Despite the forward-looking language, however, the District Court plainly contemplated that any subsequent certification order would be limited to merely redefining the class. *See* Order at 4 & n.4, *Asbury v. EQT Corp.*, No. 2:18-cv-01005-CB (W.D. Pa. Sept. 29, 2021) (Doc. No. 109). And to the extent Laudato tries to reframe the order as simple case management—directing the parties to meet and confer—the District Court also made clear that the order contained its final word on certification itself, leaving only the action of summarily adopting whatever reasonable proposal might arise from the parties' conference. *Id.* at 5 ("[T]he Court summarily will adopt the side's proposals that are most reasonable and consistent with the law."). In sum, we conclude that the District Court granted class certification

6

despite refusing to, *inter alia*, define the class. *See id.* at 2 ("In sum, the Court is convinced, and therefore holds, that class treatment is appropriate."). Accordingly, the order clearly implicates Rule 23(f) and this Court can properly exercise our jurisdiction.[4]

### III.

Next, we turn to the standard for permitting a Rule 23(f) appeal. Rule 23(f) states only that "[a] court of appeals may permit an appeal from an order granting or denying class-action certification under [Federal Rule of Civil Procedure 23], but not from an order under Rule 23(e)(1)." The Committee Notes from Rule 23's 1998 amendment describe this permission as granting something "akin to the discretion exercised by the Supreme Court in acting on a petition for

---

[4] Laudato also argues that *In re NFL Players Concussion Injury Litigation* makes plain that "preliminary" certification orders are not subject to appeal under Rule 23(f). That case, however, dealt with the appealability of what would now be a Rule 23(e) settlement order, not a Rule 23(c) certification order. *See* 775 F.3d at 584. This Court's refusal to assume jurisdiction over settlement proposals that postpone class certification is inapposite. And if our precedents did not make that distinction clear, the Rules Committee's subsequent decision to amend Rule 23 to that end accomplished that objective. Neither our precedents nor the 2018 amendments to Rule 23 stand for the proposition that so-called "preliminary" grants of class-action certification are unappealable.

certiorari" and as giving courts of appeals "unfettered discretion." FED. R. CIV. P. 23(f) comm. notes.

Despite the Committee's descriptions of the breadth of discretion accorded by Rule 23(f), Laudato argues that the permission must be construed narrowly as an exception to the final-judgment rule, citing our opinion in *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553 (3d Cir. 2009). But *Liberty Lincoln* concerned an attempted end-around the final judgment rule through exercise of pendant jurisdiction over a partial summary judgment order alongside a preliminary injunction, not class-action certification. Regardless, Laudato would have this Court limit its discretion to only those "rare" cases that justify taking jurisdiction in interlocutory appeals. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955 (9th Cir. 2005); *Sumitoto Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134 (2d Cir. 2001).[5]  But that is hardly the

---

[5] While recognizing that they could embrace wide discretion, the Second and Ninth Circuits made clear that they disfavored Rule 23(f) appeals and set forth restrictive standards of review that "will rarely be met." *Sumitoto*, 262 F.3d at 140. The Second Circuit requires that "petitioners seeking leave to appeal pursuant to Rule 23(f) must demonstrate either (1) that the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) that the certification order implicates a legal question about which there is a compelling need for immediate resolution." *Id.* at 139. And the Ninth Circuit requires that "(1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class

"unfettered" discretion to permit appeals envisioned by the Committee Notes. FED. R. CIV. P. 23(f) comm. notes ("The courts of appeals will develop standards for granting review that reflect the changing areas of uncertainty in class litigation.").

Contrary to the more limited approaches some other circuits utilize, this Court exercises our "very broad discretion" using a more liberal standard. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 376–77 (3d Cir. 2013). We have "identified several circumstances in which appellate review is appropriate," including: "when denial of certification effectively terminates the litigation because the value of each plaintiff's claim is outweighed by the costs of stand-alone litigation"; "when class certification risks placing inordinate . . . pressure on defendants to settle"; "when an appeal implicates novel or unsettled questions of law"; "when the district court's class certification determination was erroneous"; and "when the appeal might facilitate development of the law on class certification." *Id.* (quoting *Newton v.*

---

certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous." *Chamberlan*, 402 F.3d at 959.

9

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 164–65 (3d Cir. 2001) (internal quotations omitted)).[6]

EQT argues that we should allow the appeal for three reasons. First, "[r]eview is necessary to correct the district court's manifest and fundamental errors at this pivotal moment in this putative class action." Pet. at 13 (internal quotation omitted). Second, "review will enable the Court to . . . re-emphasize the need for a rigorous analysis of all of the Rule 23 requirements based on the legal elements of the claims and the parties' evidence, and clarify that conditional certification of an undefined class pending the parties' joint formulation of a satisfactory class definition is improper." *Id.* And third, "the usual pressure to settle inherent in a grant of class certification is magnified here by the court's avowed effort to leverage certification to drive Defendants to settle." *Id.*

Laudato argues that we should not allow the appeal for three reasons: the litigation was not effectively terminated by a denial of class certification because class certification was preliminarily granted; "[t]he Order did not, and could not, place 'inordinate or hydraulic' pressure on EQT to settle because, without a class definition, it would be impossible for either party to even understand what the parameters of, or parties to, such a resolution would be"; and "[t]he Order did not implicate or otherwise adjudicate any unsettled questions

---

[6] Laudato cites *Newton* for the proposition that there are only three general justifications for interlocutory class-certification review. In doing so, he ignores *Rodriguez*'s broader characterization of *Newton*.

10

of law because it simply determined that this matter should proceed as a class action lawsuit." Response at 16–17.

We agree with EQT that interlocutory review is appropriate. Contrary to Laudato's assertion, a class-action-certification order that leaves unresolved a crucial element—the class definition—is no less likely to exert substantial pressure on a defendant to settle than a standard class-action-certification order. In some circumstances, that uncertainty may even create *more* pressure to settle. Here, beyond that general uncertainty, EQT could reasonably read the District Court's order as an attempt to nudge them towards settlement, further increasing that pressure. The District Court repeatedly suggested that it knew EQT's interests better than EQT did and hinted at the consequences of not playing along. *See* Order at 1, *Asbury v. EQT Corp.*, No. 2:18-cv-01005-CB (W.D. Pa. Sept. 29, 2021) (Doc. No. 109) ("In sum, it would seem in *everyone's* best interests to resolve this case on a class basis, Defendants for the purpose of manageably resolving their land-use rights and liabilities, and for the putative plaintiffs, to receive just compensation." (emphasis in original)); *id.* at 4 ("Assuming Defendants are, true to their words, desirous of resolving the potential liabilities flowing from their use of the FERC-sanctioned gas fields, it would appear in their interests to agree upon a crafted, rational class-definition, for the purposes of finality and for obtaining, to a reasonable degree of certainty, preclusive effect."). And those assertions culminated in a recommendation that EQT entertain settlement discussions through a mediator rather than continue to litigate its position. *Id.* at 5 & n.5 ("In light of the rulings and parameters established above, the Court believes that this case would benefit from another round of mediation."). Further, an

11

appeal would present this Court with an opportunity to facilitate development of the law on class certification. *See Rodriguez*, 726 F.3d at 376–77.

Because of the apparent pressure the purported certification places on EQT to settle and this Court's opportunity to facilitate development of the law on class certification, review of the District Court's order is appropriate under *Rodriguez*.

IV.

For the above reasons, the Petition for Permission to Appeal Under Rule 23(f) will be **GRANTED**. Any such appeal shall be retained by this panel. After docketing the appeal, the Clerk shall issue an order advising the parties that the Court is considering summary action. *See* 3d Cir. I.O.P. 10.6. The parties will be given an opportunity to file arguments in support of or in opposition to summary action.

12